**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0803n.06
Filed: November 1, 2006

No. 05-4505

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| XUE YING LIN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | OF AN ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| ALBERTO R. GONZALES, ATTORNEY | ) | APPEALS |
| GENERAL, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**Before:**     **BOGGS, Chief Judge; MARTIN, Circuit Judge; OLIVER, District Judge.**[*]

      **BOGGS, Chief Judge.**  Xue Ying Lin petitions for review of an order of the Board

of Immigration Appeals denying her application for asylum and associated relief.  Because we find

that the determination of the Board of Immigration Appeals ("BIA") and the Immigration Judge

("IJ") was supported by substantial evidence, we deny the petition for review.

**I**

      Xue Ling Lin is a native and citizen of the People's Republic of China.  Lin entered the

United States illegally, with her boyfriend, in January 1991.  Lin filed an asylum application

_____

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern
District of Ohio, sitting by designation.

approximately two years later, on April 22, 1993.  In October 2000, Lin had her first hearing in New York, admitted she was subject to removal, and requested asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and relief pursuant to the Convention Against Torture under 8 C.F.R. § 1208.16(c)(2).

Lin identifies three reasons that she fears persecution and/or torture upon her return.  First, in her asylum application and testimony, Lin states that she was threatened by a Chinese government official.  Lin's father had run a food stand in Fuzhou city in the Fujian province of China since 1986; Lin began to help him with the stand in 1988.  The stand was under the jurisdiction of the Management Bureau of Industrial and Commercial Business.  The Vice President of that Bureau would often eat at the stand, and would sometimes bring his "mentally deficient" son along.  The son enjoyed Lin's company and the Vice President proposed a marriage between the two.  Lin and her family found this proposal highly unappealing, both because of the mentality of the Vice President's son and because Lin already had a boyfriend with whom she planned to be married.  This angered the Vice President, who proceeded to threaten Lin's father and eventually cancel his business license.  During her testimony before the IJ, Lin was asked if there was "any political, religious, race, national original [sic], reason why this person wanted you to marry his son."  Lin responded that she "had a boyfriend.  That's why [she] did not want to marry him."

Lin's second reason relates to China's restrictive family planning policies.  Lin married her boyfriend on December 19, 1995.  Since then, they have had two children:  a daughter born on June 5, 1996 and a son born on January 13, 2000.  At her hearing, Lin testified that she was afraid that if returned to China she would be forced to undergo sterilization as she has had two children since

leaving, which she claims violates China's one-child policy. She also testified that her mother had been forcibly sterilized after having three children.

Lin's third claim is that China fines and imprisons illegal emigrants returning from abroad. Lin states that she left the country with the help of a smuggler and that if returned, she would face both imprisonment and heavy fines.

The IJ ruled against Lin from the bench. The IJ found that based on the information in the record regarding China's policies, Lin's fears of forced sterilization and persecution due to illegal emigration were not objectively well-founded. Further, the IJ denied relief on the basis of Lin's purported persecution at the hands of the government official because the IJ found that the dispute was personal, and not on account of "race, religion, nationality, membership in a particular social group, or political opinion" as required by 8 U.S.C. § 1101(a)(42) and 8 U.S.C. § 1231(b)(3). The BIA dismissed Lin's appeal and affirmed the IJ's ruling without discussion.

## II

This court has appellate jurisdiction over a final order of removal under Section 242(b) of the Immigration and Nationality Act of 1952 ("INA"), as amended, 8 U.S.C. § 1252(b)(2) (2000). Lin has exhausted all administrative remedies available to her by right as required by 8 U.S.C. § 1252(d)(1). Lin filed a timely petition for review by this court pursuant to 8 U.S.C. § 1252(b)(1).

This court reviews purely legal questions regarding the requirements of the Immigration and Nationality Act and the Convention Against Torture *de novo*. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). We review the credibility findings and factual determinations of the BIA for substantial evidence and will uphold the denial of asylum or withholding of removal if it is "supported by

reasonable, substantial, and probative evidence on the record considered as a whole." *Ibid.* We may

reverse a decision only if the evidence "not only supports a contrary conclusion, but indeed *compels*

it." *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (quoting *Klawitter v. INS*, 970 F.2d 149,

152 (6th Cir. 1992)); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

When, as in this case, the BIA summarily adopts the decision of the IJ without issuing its own

opinion, this court reviews the decision of the IJ as the final administrative order. *See Hasan v.*

*Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005).

### III

Lin's primary argument on appeal is that there is no substantial evidence in the record that

supports the IJ's finding that Lin does not have a well-founded fear of persecution.[1] The decision

---

[1] While a well-founded fear of persecution is required to establish refugee status for purposes of asylum eligibility, withholding of removal under the INA requires the applicant to "demonstrate that there is a clear probability that he would be subject to persecution . . . ." *Mikhailevitch*, 146 F.3d at 391. To prevail on her withholding of removal claim, Lin faces the same question, just with "a more stringent showing of truth." *Ibid.* Therefore, a determination that Lin is not eligible for asylum forecloses discussion of withholding of removal under the INA. *Ibid.* Withholding of removal under the Convention Against Torture similarly requires that Lin prove that it is more likely than not that she will be tortured upon her return to China. *Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005). Therefore, if Lin's asylum claim fails because she has not demonstrated a well-founded fear of persecution, she will not be entitled to relief under the Convention Against Torture. Unlike both asylum and withholding of removal under the INA, however, the Convention Against Torture does not require that the torture be because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. *Castellano-Chacon v. INS*, 341 F.3d 533, 551 (6th Cir. 2003); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006). Therefore, in cases where an applicant can establish a well-founded fear of both persecution and torture, but simply cannot link that persecution to one of the bases specified in the asylum provisions, the applicant can lose an asylum claim and still be entitled to relief under the Convention Against Torture. *See Kalthamas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001).

to grant asylum is a two-step inquiry. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). The first step

is to determine whether the applicant qualifies as a refugee. *Ibid.* Only if the petitioning alien

qualifies as a refugee may the Attorney General then choose to exercise his discretion and grant

asylum. *Ibid.* The petitioning alien has the burden of proof at both stages. *Klawitter*, 970 F.2d at

151. A refugee is any person outside his or her home country who is unable or unwilling to return

to that country because of persecution or a well-founded fear of persecution on account of race,

religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §

1101(a)(42). Political opinion persecution is statutorily defined to include a person forced to

undergo an abortion or forced sterilization. 8 U.S.C. § 1101(a)(42). A well-founded "fear of future

persecution must be both subjectively genuine and objectively reasonable." *Abay v. Ashcroft*, 368

F.3d 634, 637 (6th Cir. 2004) (quoting *Mikhailevitch*, 146 F.3d at 389). A well-founded fear does

not require proof that persecution is more likely than not. *INS v. Cardoza-Fonseca*, 480 U.S. 421,

431 (1987). An alien who satisfies the burden of establishing past persecution is presumed to have

a well-founded fear of future persecution. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004).

### a. Lin's Fear that China Will Enforce Its Family Planning Policy

Lin first argues that the IJ overlooked critical country evidence in finding that her fear of

forced sterilization is objectively unreasonable. The question upon appeal, however, is not whether

the IJ explicitly referred to every piece of arguably relevant evidence in her oral opinion, but whether

the evidence in the record would "compel" a rational adjudicator to come to a contrary conclusion.

*Mikhailevitch*, 146 F.3d at 388. In this case, the evidence in the record regarding China's family

planning policy is vague and full of conflicting, sometimes poorly substantiated, reports. The most

recent report in the record states that "forced sterilization is not tolerated now in China." Other reports state that while parts of China may enforce the one-child policy, other parts, specifically Lin's home province of Fujian, are much more lax in their enforcement. The State Department's 1998 Profile of Asylum Claims and Country Conditions ("Asylum Profile") states that Fujian province has a one-and-a-half child policy, allowing a second child if the first is a girl, but that the policy also requires a couple wait four years between children and apply for permission to have the second child.[2] The Asylum Profile also states that this one-and-a-half child policy applies mainly in rural areas while much of urban Fujian still follows a one-child policy. The Asylum Profile reports that Fujian's lax enforcement of family planning rules has been criticized in the official press. Another part of the Asylum Profile finds that persons who have multiple children abroad have been excused from any penalty, or faced at worst modest fines.

The determination of current conditions prevailing in a particular country is the purview of the Board of Immigration Appeals. *INS v. Ventura*, 537 U.S. 12, 16-18 (2002). This court will only overturn such a determination if a rational adjudicator looking at the record as a whole would be compelled to conclude to the contrary. *See* 8 U.S.C. § 1252(b)(4)(B). Here, a rational adjudicator could consider all of the information available on family planning in Fujian, find that the one consistent theme is the lax enforcement of any formal policies, and conclude that the probability of forced sterilization for any Chinese national returning to Fujian is low. A rational adjudicator could further conclude that Lin's approximate compliance with Fujian's one-and-a-half child policy and

---

[2] Lin's two children were born approximately three-and-a-half years apart and Lin never applied for permission to have a second child.

the fact that she had the children while overseas further decreases the likelihood of forced sterilization upon return. Therefore, a rational adjudicator would not be compelled to find that Lin's fear is objectively reasonable and the IJ's decision on this ground must be affirmed.[3]

Lin also argues that even if her fear of forced sterilization is not well-founded, she does have a well-founded fear of a severe fine for violating the family planning laws and that severe economic penalties can rise to the level of persecution. With regard to her legal contention, Lin is correct; severe economic penalties, including harsh fines, can rise to the level of persecution. *See Berdo v. INS*, 432 F.2d 824, 828 (6th Cir. 1970). However, the Asylum Profile also states that a "couple returning to China with more children than they would have been permitted at home are at worst, given modest fines." Considering that Lin arguably has not seriously violated Fujian's one-and-a-half child policy, and given the reports of Fujian's generally lax enforcement, a rational adjudicator could find that it is objectively unreasonable to fear a fine large enough to rise to the level of persecution. *Cf. Li v. Gonzales*, 405 F.3d 171, 178 (4th Cir. 2005) (finding that the imposition of a fine of over a year's salary for having a child outside of wedlock did not constitute persecution).

### b. Lin's Fear of Punishment for Illegally Emigrating

---

[3] In her brief before this court, Lin cites *Guo v. Ashcroft*, 386 F.3d 556 (3d Cir. 2004) for the proposition that other courts have held that having a second child in the United States creates a prima facie case for asylum. In *Guo*, the asylum applicant presented an affidavit from an American demographer of China, John Aird, that stated that returning Chinese nationals who had children abroad should fear enforcement of the family planning policies upon return to China. *Id.* at 565. In the affidavit, Aird harshly criticizes the State Department's 1998 China Profile of Asylum Claims and Country Conditions for underestimating the danger of forced sterilization. No such affidavit appears in the record of this case, however. Further, this circuit has made its approval of State Department reports clear. *See Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004); *see also Lin v. Gonzales*, 435 F.3d 708, 711 (7th Cir. 2006) ("[m]ost of the sources that Aird relied upon in his 2003 affidavit date back to the 1990s").

Lin next argues that she will be subjected to imprisonment or a severe fine upon her return to China because of her illegal departure, and that such punishment will rise to the level of persecution. The IJ determined that there was no support in the record for Lin's claim that she would be fined or imprisoned upon her return.

The record again consists of conflicting reports. The most recent report found that illegal emigres returned to China by Canada were not incarcerated, and that the Fujian province has even offered economic incentives to returnees. On the other hand, the Asylum Profile states that returnees are generally fined and that they are also sometimes subjected to lengthy detention. Faced with these conflicting reports, a rational adjudicator could rely more heavily on the more recent report, which also focuses on the Fujian province instead of the country as a whole. As the record again would not compel a rational adjudicator to the conclusion that a reasonable person would fear punishment rising to the level of persecution upon return, we affirm the findings of the IJ.

### c. Lin's Fear of Persecution at the Hands of the Government Official

Lin next argues that the threats she and her family received following her rejection of the marriage proposal were due to an "imputed political opinion," and therefore qualify as persecution for the purpose of both asylum and withholding of removal under the INA. The IJ concluded that the dispute was personal in nature, and that there is no authority for the argument that simply refusing to marry the child of a government official constitutes an imputed political opinion. Again, the record does not compel a contrary conclusion. This court has held that if the alleged persecutor views a dispute as a personal disagreement and not political, and the alien never stated publicly that her grounds for complaint were political, the alien has not established persecution due to political

opinion. *See Marku v. Ashcroft*, 380 F.3d 982, 986-87 (6th Cir. 2004). The record in this case shows no such public statement. Further, Lin's testimony before the IJ supports the IJ's conclusion. When asked why she did not want to marry the son of the Vice President, her answer was that she already had a boyfriend. This is the quintessential personal disagreement.

Lin also argues that the IJ did not specifically address her contention that the threats from the Vice President entitle her to relief under the Convention Against Torture even if the threats were not based on imputed political opinion. Lin contends that this court requires an IJ to make a separate, specific finding on any claim for relief under the Convention Against Torture, and in the absence of such a finding, this court must remand. *See Singh v. Ashcroft*, 398 F.3d 396, 405 (6th Cir. 2005). The IJ in this case, however, did make such a specific finding: "We find that she has not established that torture would be more likely than not, which is the criteria for relief under the Convention Against Torture." It is not a detailed, explicated finding, but an exegesis is not required. Unlike in *Singh*, there is no indication in this case that the IJ misunderstood the differences between a claim under the asylum provisions and the Convention Against Torture. In the absence of such indicia, a specific finding such as the one here is sufficient as long as the record does not compel a contrary conclusion. In this case, it does not. While there is no dispute that Lin and her family were subjected to threats and that her father's business license was cancelled, relief under the Convention Against Torture requires "severe pain or suffering, whether physical or mental." 8 C.F.R. § 208.18(a)(1). A reasonable person could rationally conclude that vague threats and a cancelled business license do not rise to the level of "severe pain or suffering." A rational adjudicator could also conclude that as sixteen years have passed since the time of the dispute, it is not likely to resume

upon Lin's return to China. In either case, the record does not compel the conclusion that it is more likely than not that Lin will be tortured upon her return to China. Therefore, we affirm the IJ's finding on this ground as well.

**IV**

For the reasons set out above, we DENY the petition for review.