CLAY, Circuit Judge.
Petitioner, Da Xing Lin, seeks review of a decision of the Board of Immigration Appeals (“BIA”), dated October 26, 2006, upholding an immigration judge’s denial of his application for asylum pursuant to 8 U.S.C. § 1158(a), withholding of removal pursuant to § 241(b)(3) of the Immigration and Nationality Act (“INA”), 8 U.S.C. § 1231(b)(3), and withholding of removal under the Convention Against Torture (“CAT”). Specifically, Lin appeals the BIA’s adverse credibility findings, alleging that they do not go to the heart of his claim, and the determination that he failed to demonstrate a well founded fear of future persecution. For the reasons that follow, we DENY the petition for review.
BACKGROUND
Petitioner, Da Xing Lin, is a citizen of China who illegally entered the United States via the Virgin Islands on March 23, 2002. Lin was immediately apprehended by immigration authorities and served with a notice to appear charging him with removability from the United States pursuant to § 212(a)(6)(A)® of the Immigration and Nationality Act. On April 8, 2003, after admitting removability, Lin applied for asylum, withholding of removal and Convention Against Torture (“CAT”) protection.
In his application for asylum, withholding of removal and CAT protection, Lin alleged that he fled his native China to escape persecution by government family planning officials. Lin alleges that he is a farmer with limited education, who has a wife and two children who reside in China. Lin claimed that after the birth of his first daughter in April of 1996, family planning officials forced his wife to wear an intrauterine device (“IUD”). Nevertheless, Lin’s wife again became pregnant and gave birth to a second daughter in April of 2001.
One month after the birth of their second child, Lin and his wife fled their village both in hopes of having yet another child and out of fear that they would be subject to a sterilization order by family planning officials. According to Lin, the family’s absence from the village did not go unnoticed by government officials as they began looking for Lin almost immediately. Lin alleges that a sterilization order was issued by government officials ten days after they absconded from the village. Lin alleges that government officials, in their attempt to locate his family and secure compliance with the sterilization order, took his mother “hostage.”
After hearing of the detention of his mother, Lin and his wife returned to the village. Upon return, Lin’s wife was forced to undergo sterilization at FengChend Hospital by family planning authorities. Seeking redress for his wife’s sterilization and his mother’s mistreatment, Lin alleges that he confronted the leader of the family planning authority. Thereafter, Lin alleges that he was attacked by the leader’s family and accused of assault. As *473 a result of the confrontation and the accusation of assault, Lin fled the village and went to Fuzhou City for seven to eight months. Lin further alleges that he left China for the United States out of a fear of persecution from the Chinese government as a result of his attempted defiance of family planning authorities.
In addition to his narrative detailing his fear of future persecution, Lin attached a number of documents in support of his application. The documents included a marriage certificate, x-rays conducted after the sterilization of Lin’s wife, and a disease certificate. Both the x-rays and disease certificate were issued by the Hospital of Fujian Province and dated June 25, 2002. Lin also submitted a Birth Control Operation Certificate, which was dated May 30, 2001. Additionally, Lin submitted a letter from a sister who resided in Toledo, Ohio regarding his wife’s sterilization in China. In her letter, Lin’s sister described the circumstances surrounding the sterilization of Lin’s wife. Significantly, the letter represented that the sterilization took place after the birth of his first child in 1996, rather than in 2001, after the birth of Lin’s second child.
On May 2, 2005, a hearing was conducted regarding Lin’s application for asylum, withholding of removal, and CAT protection. Lin testified in support of his application. During his testimony, Lin testified that he came to the United States after his wife was forced to wear an IUD. After a follow-up question from his counsel, Lin corrected himself and stated that he sought asylum after his wife was sterilized after the birth of their second child. Lin also recounted the facts leading up to his wife’s sterilization. When asked by the Immigration Judge (“IJ”) why his wife returned to the village despite the sterilization order, he contended that she returned because of her obligation to their family, notwithstanding her fear of sterilization. Lin further testified that upon finding that his wife had been sterilized, he went to the office of the family planning official responsible, rather than the home of the official, as he had indicated in his written application.
The IJ asked a number of additional questions regarding perceived inconsistencies between Lin’s written application and his testimony during the hearing. The IJ asked Lin whether he faced persecution while residing in Fuzhou City and why such information was not documented in his written application. Lin responded that he was notified of attempts by family planning officials to locate him by friends and stated that he did not relate the attempts of family planning officials to find him in his written application because he was unaware of the need to include such information. Lin further testified that he left China without permission out of fear of family planning authorities. When asked what would happen if he were repatriated to China, Lin stated that he would be fined and prosecuted by the Chinese government.
On May 2, 2005, the IJ issued an oral decision denying Lin’s application for asylum, withholding of removal, and CAT protection. In a written opinion, the IJ summarized the grounds for denial of Lin’s application. As an initial matter, the IJ denied Lin’s application after finding that it was not timely filed. Alternatively, the IJ found that even if Lin’s application was timely filed, that he failed to sustain his burden of proof because he was not credible, had omitted key details from his written application without adequate explanation, and provided testimony that contradicted the information provided in his written application. The IJ further discounted the documentary evidence submitted by Lin because the records submit *474 ted were dated a year after the alleged sterilization and were not issued by the hospital where the procedure was performed. Additionally, the IJ found that the “birth control operation certifícate” submitted by Lin to be “highly suspect” based on a State Department report which stated that the only official document released by the family planning commission in China is a certificate given to couples who promise to only have one child. (IJ Op. at 23) The IJ observed that “[t]hese inconsistencies perhaps in and of themselves would not necessarily undercut the respondent’s credibility. However, these inconsistencies coupled with key omissions in respondent’s written application support or provide specific and cogent reasons to support this Court’s adverse credibility finding.” (I.J. Op. at 20). Moreover, the IJ found that Lin did not meet his burden of proof with respect to his application for asylum as he failed to establish a well founded fear of future persecution if he were to return to China.
Lin appealed the denial of his application for asylum, withholding of removal and CAT protection to the BIA. Setting aside the question of the timeliness of Lin’s application, the BIA affirmed the IJ’s credibility determination. In addition, the BIA affirmed the IJ’s finding that Lin failed to demonstrate a well founded fear of persecution. Lin now petitions for review of the BIA’s determination.[1]
DISCUSSION
A. Standard of Review
“When the BIA does more than adopt the decisions of the IJ, ‘our review is limited to those actions taken by the BIA.’ ” Preldakaj v. Keisler, 252 Fed.Appx. 79, 83 (6th Cir.2007) (unpublished) (citing Selami v. Gonzales, 423 F.3d 621, 624 (6th Cir. 2005)). This Court reviews the factual findings of the BIA for substantial evidence. Mostafa v. Ashcroft, 395 F.3d 622, 624 (6th Cir.2005). Under this standard, the BIA’s determination must be upheld unless “manifestly contrary to law,” and any “administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4); Mostafa, 395 F.3d at 624. Therefore, in order to reverse a factual determination, this Court “must find that the evidence not only supports a contrary conclusion, but indeed compels it.” Klawitter v. INS, 970 F.2d 149,152 (6th Cir.1992).
Where a BIA decision rests on the credibility of an applicant, such a finding is entitled to deference by this Court. Indeed, “[cjredibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard. This is a deferential standard: A reviewing court should not reverse simply because it is convinced that it would have decided the case differently.” Sylla v. INS, 388 F.3d 924, 925 (6th Cir.2004) (internal citations omitted). “While an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons. An adverse credibility finding must be based on issues that go to the heart of the applicant’s claim. They cannot be based on an irrelevant inconsistency.” Id. at 926 (internal citations omitted).
B. Analysis
Lin argues that the BIA erred in denying his application for asylum inasmuch as *475 its decision rested on adverse credibility determinations that do not go to the heart of his claim. We disagree.
The Attorney General, and an Immigration Judge on his behalf, has discretion to grant asylum to an applicant who qualifies as a “refugee.” See Chen v. Gonzales, 447 F.3d 468, 471 (6th Cir.2006). To qualify for asylum, therefore, an applicant must establish that they are a “refugee” and that they merit the favorable exercise of discretion by the IJ. Ben Hamida v. Gonzales, 478 F.3d 734, 736 (6th Cir.2007). A refugee is one “who is unable or unwilling to return [to his or her country of origin] because of persecution or a well founded fear of persecution on account of race, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1101(a). Pursuant to 8 U.S.C. 1101(a)(42)(B), a person who has been forced to undergo a sterilization, or who has been “persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive birth control program shall be deemed to have been persecuted on account of political opinion.” The statute further provides that “a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.” 8 U.S.C. § 1101(a)(42)(B). The protections of the statute extend to the individual forced to undergo sterilization or abortion as well as their spouse. In re C-Y-Z, 21 I. & N. Dec. 915, 918 (BIA 1997) (“[T]he spouse of a woman who has been forced to undergo [a] ... sterilization procedure can thereby establish past persecution.”).
The burden of proof is on the applicant to demonstrate that he meets the definition of a refugee. 8 U.S.C. § 1158(b)(1)(B)®. “The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.” 8 C.F.R. §§ 208.13(a) & 208.13(b). Testimony is credible if it is “believable, consistent and sufficiently detailed to provide a plausible and coherent account.” Perkovic v. INS, 33 F.3d 615, 621 (6th Cir.1994). However, if the applicant’s testimony “could be viewed as incredible, inconsistent, or incoherent, a fact-finder may reasonably conclude, absent corroboration, that the testimony is insufficient to meet the standard of proof required.” Sako v. Gonzales, 434 F.3d 857, 862 (6th Cir.2006). Although “irrelevant inconsistencies cannot constitute the basis for an adverse credibility determination,” Sylla, 388 F.3d at 926, they may be relevant to the question of credibility where they can be interpreted as “attempts by the applicant to enhance his claims of persecution.” Daneshvar v. Ashcroft, 355 F.3d 615, 623 (6th Cir.2004).
1. Past Persecution
In denying Lin’s application for asylum, the BIA affirmed the IJ’s adverse credibility determination. In reaching this conclusion, the BIA relied on several specific findings of the IJ. First, the BIA noted several discrepancies between Lin’s testimony during the hearing and his written application for asylum. For example, during the removal hearing, Lin initially testified that his wife was forced to wear an IUD after the birth of his second child. Lin later corrected himself after prompting from his attorney. While Lin’s explanation that he was nervous during the hearing and that he did not understand the question because of language barriers may plausibly account for the misstatement, the BIA is nevertheless entitled to rely upon his demeanor and testimony during the hearing to assess his overall credibility. Moreover, the IJ found Lin’s testimony regarding the return of his wife to the *476 village, despite knowledge that a sterilization order had been issued, to be incredible. Although Lin contends that the BIA did not adequately take into account the family values that undergird Chinese society in affirming the IJ’s findings, the overall plausibility of Lin’s application may constitute substantial evidence supporting an adverse credibility finding inasmuch as “[t]he trier of fact can base a credibility determination on ‘all relevant factors’ including the applicant’s demeanor and the consistency and plausibility of the various statements.” Preldakaj, 252 Fed.Appx. at 83 (citing 8 U.S.C. § 1158(b)(1)(B)(iii)).
Second, the BIA relied upon discrepancies between Lin’s testimony and the documentary evidence submitted as part of his application for asylum. For example, a letter written by Lin’s sister stated that the sterilization of Lin’s wife occurred in 1996 after the birth of Lin’s first child, rather than in 2001.[2] The BIA observed that Lin’s sister was unable to testify directly or correct the discrepancy despite the fact that she lived only an hour and a half away in Toledo, Ohio. Reliance on Lin’s failure to produce additional evidence in the form of his sister’s testimony as a basis for an adverse credibility determination was not in error. Rather, “where it is reasonable to expect corroborating evidence ... [t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof.” Dorosh v. Ashcroft, 398 F.3d 379, 382 (6th Cir.2004).
Additionally, evidence documenting the sterilization of Lin’s wife was issued in 2002, more than a year after Lin alleged that his -wife was forcibly sterilized. During the hearing, Lin initially testified that the documents were issued to his wife after the sterilization occurred. However, upon questioning from the IJ, Lin admitted that the documents were obtained after his attorney advised him that documentation of his wife’s sterilization would be necessary for his asylum application. Certainly, discrepancies regarding when and where the sterilization took place go to the heart of Lin’s asylum application as they can be viewed as an “attempt[ ] by the applicant to enhance his claims of persecution.” Daneshvar, 355 F.3d at 623.
The BIA further relied upon the IJ’s decision discounting the veracity of the documents certifying the sterilization of Lin’s wife based on country reports noting that official certificates are issued only after the birth of a first child and that the distribution of fraudulent documents is pervasive. Lin argues that the IJ gave undue weight to the country reports and asserts that his province issues official documents regarding sterilizations. Lin, however, does not provide any additional evidence regarding the official practice of his province beyond his assertions and it cannot be said, therefore, that a contrary conclusion is compelled by the record before this Court.
Not all of the inconsistencies identified by the IJ and relied upon by the BIA, however, go to the heart of Lin’s asylum application. The IJ noted that Lin did not mention that his furniture was damaged in his written application nor did Lin specify that he went to the “office” of the family planning leader regarding his wife’s sterilization rather than the “home” of the family planning official. To the extent that *477 these omissions or misstatements can be construed to be inconsistencies, they cannot be said to go to the heart of Lin’s asylum application as they have little to do with the critical question of whether his wife underwent a forced sterilization or whether Lin would be subject to future persecution.
Nevertheless, those discrepancies and inconsistencies which do go to the heart of Lin’s asylum claim constitute substantial evidence to support the adverse credibility determination of the BIA. Although this Court may have chosen to exercise its discretion differently if faced with the same facts, this, however, is not the test. Rather, this Court must evaluate the BIA’s determination for substantial evidence and reverse only if a contrary result is compelled by the record. In the case at bar, the BIA relied on evidence that Lin misstated when his wife was sterilized during his removal hearing; a letter by Lin’s sister that contradicted the date Lin alleged that the sterilization occurred; and discrepancies contained in documentary evidence regarding the sterilization of Lin’s wife that was issued by a different hospital and on a different date than represented by Lin. Here, “[t]he IJ’s determination that [Lin] lacked credibility was not based on overwhelming evidence; however, [Lin] has not met the ‘high standard of compelling a contrary result.’ ” Bah v. Gonzales, 462 F.3d 637, 640 (6th Cir.2006) (internal citations omitted).
2. Well founded Fear of Future Persecution
In addition to past persecution, an asylum applicant may meet his burden by establishing a well founded fear of future persecution. In the context of forced sterilization, a person who reasonably fears that “he or she will be forced to undergo such a procedure or [will be] subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.” 8 U.S.C. § 1101(a)(42).
Lin contests the BIA’s finding that he did not sufficiently demonstrate a well founded fear of future persecution. The BIA summarily affirmed the IJ’s determination that Lin did not meet his burden based on perceived inconsistencies between Lin’s testimony before the IJ wherein he stated that he was told by friends that family planning officials were looking for him and that he would do well to leave China and his written application where he made no mention of such warnings. The IJ also found that Lin failed to demonstrate a well founded fear of future persecution based on country reports indicating increased ability to internally migrate within China to escape harassment or persecution by local family planning officials.
Lin’s challenge to the IJ’s finding is well taken inasmuch as the record indicates that the IJ placed undue emphasis on the omission of the warnings from Lin’s written application. As this Court noted in Liti v. Gonzales, 411 F.3d 631, 638 (6th Cir.2005), “the circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant’s claim to asylum or withholding, and ... holding applicants to such a standard is not only unrealistic but also unfair.”
Nevertheless, Lin fails to address the IJ’s finding that he failed to meet his burden of proof with respect to a well founded fear of persecution based on country reports indicating the increased ability of individuals to internally migrate within China to avoid persecution by family planning officials. This finding constitutes substantial evidence to support the denial of Lin’s claim. Indeed, this Court has held *478 that country reports “are generally the best source of information on conditions in foreign nations,” and therefore, “the IJ’s reliance on these reports is supportable.” Mullai v. Ashcroft, 385 F.3d 635, 639 (6th Cir.2004).
Moreover, even assuming that Lin could present evidence that he could not easily relocate within China, he failed to present an argument regarding the persecution he would face upon return to China. Instead, he offers a vague and unsupported statement that “he cannot live safely in Fuzhou City.” (Pet. Br. at 21). Such a conclusory statement is insufficient to establish a well founded fear of persecution and does not compel a contrary finding by this Court. Therefore, we find that the BIA had substantial evidence upon which to rest its denial of Lin’s asylum application.
CONCLUSION
For the reasons set forth above, we DENY the petition for review.

. Although the BIA found that Lin did not meet his burden with respect to his claims for asylum and withholding of removal, Lin only challenges the findings of the BIA with respect to its denial of his application for asylum. We therefore treat his claim for withholding of removal as abandoned.

. Although Lin subsequently proffered a revised letter from his sister listing the date of his wife's sterilization as May of 2001, this Court may not consider such evidence because it was not before the IJ. See Denko v. INS, 351 F.3d 717, 730 (6th Cir.2003) (noting that this Court’s review is limited to the administrative record that was the basis for the order of removal).