NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0371n.06

No. 09-3697

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Jun 21, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| MU HUA PAN, et al., | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioners*, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | **O P I N I O N** |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| *Respondent*. | ) | |
| | ) | |

BEFORE:     KEITH, COLE, and GIBBONS, Circuit Judges.

**COLE, Circuit Judge.**  Mu Hua Pan and Da Chun Zheng, citizens of China, petition for review of the Board of Immigration Appeals ("BIA") decision affirming the Immigration Judge's ("IJ") denial of their applications for asylum and requests for withholding of removal and relief under the Convention Against Torture ("CAT").  Pan and Zheng sought asylum because the births of their two sons led them to fear forced sterilization if they were to return to China.  The IJ determined that, while credible, Pan and Zheng did not establish a well-founded fear of future persecution.  The BIA affirmed.  For the following reasons, we **AFFIRM** the BIA's decision and **DENY** the couple's petition for review.

## I.  BACKGROUND

Petitioners Pan and Zheng are natives and citizens of China.  Both hail from Fujian Province. Zheng entered the United States without inspection in 1988, and Pan entered the country without

inspection five years later. Pan and Zheng married in New York in 1996 and have two sons, both of whom were born in this country. Pan testified that she and Zheng would like to have more children.

Pan and Zheng filed separate asylum applications before their marriage, and the Government commenced deportation proceedings against each of them. Zheng's asylum application was initially denied on January 23, 1995. Pan filed an amended asylum application in 1998, based on a fear of sterilization and large fines because of the births of their two children and China's family-planning policies. Zheng's proceedings were subsequently reopened and the couple's cases were formally consolidated. On February 10, 2004, an IJ denied the couple's applications for asylum, withholding of removal, and relief under CAT. The BIA affirmed. The couple then appealed to this Court and, in light of a Government request, a previous panel ordered that the case be remanded. The BIA remanded the case to the IJ on April 6, 2006.

On remand, the IJ found the petitioners to be credible. Pan testified that her sister and two sisters-in-law were sterilized after having two children in China. The record contains a letter from Pan's sister-in-law, stating, "People like me who have given birth to two children are forced to undergo sterilization." (Joint Appendix ("JA") 882.) The IJ reviewed the complete record of proceedings—including the letter and several other submitted documents—and determined that if the couple were to return to China, they would take their children with them and would be required to register them as permanent residents in order for them to attend school. The registration would put the government on notice that the couple had two children. One key document, an affidavit of Dr. John Aird, a retired demographer, was submitted to support the couple's assertion that they had

a well-founded fear of persecution because the births of their two children would be considered a violation of China's family-planning policies.

The IJ found the affidavit unpersuasive, however, because it "is completely silent as to whether returnees to the Fujian Province have been subjected to forced sterilization. Moreover, . . . the Aird affidavit, written four years ago, relied solely on a review of documents and not on any first hand knowledge." (JA 81.) The IJ found the State Department reports in the record to be "more persuasive" than the Aird affidavit because they were more recent and based on first-hand information. (*Id.*) Further, the IJ determined that "[t]he evidence indicates that respondents can choose to not have their United States born children counted for family planning purposes if they are willing to either leave their children in the United States or forgo certain free benefits available if the children are registered as permanent residents of China (although the benefits are still available, but at a cost)." (*Id.* at 82.) As a result, the IJ denied the couple's applications for asylum, withholding of removal, and protection under the Convention Against Torture.

The BIA affirmed. It found that Pan's assertion that "family planning policy officials forcibly sterilized her sister and two of her sisters-in-law after they gave birth to multiple children," was insufficient to establish a well-founded fear of persecution because the procedures occurred several years ago, the record is devoid of the incidents' underlying facts, and the couple "also have not asserted that these individuals had United States citizen children." (Certified Administrative Record ("CAR") 9.) The BIA further dismissed Petitioners' claim of economic harm because they "have not satisfied their burden of demonstrating that they will encounter deliberate imposition of economic disadvantage amounting to 'persecution.'" (*Id.*)

Petitioners now appeal from the BIA's decision.

## II. ANALYSIS

### A. Standard of Review

In a case in which the BIA both sets forth its own reasoning and adopts portions of the IJ's decision, we review both the BIA's decision and the adopted portions of the IJ's decision. *See Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). We review the BIA's legal conclusions de novo, although we must defer to the BIA's reasonable interpretations of the Immigration and Nationality Act. *Id*. at 247 (citing *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)). We review factual findings under a substantial-evidence standard, upholding such findings as long as they are supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Id*. (internal quotation marks omitted). We may not reverse simply because we would have decided the matter differently. *Koulibaly*, 541 F.3d at 619. The BIA's findings of fact, therefore, are conclusive unless "'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

### B. Asylum

Petitioners argue that they fear persecution in the form of government sterilization if they return to China because of the country's family-planning policies. The Attorney General has discretion to grant asylum to a "refugee," a person "who is unable or unwilling to return to" her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "'[A] person who has a well founded fear that he or she will be forced to undergo

[an involuntary sterilization or abort a pregnancy] or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.'" *Lin v. Mukasey*, 273 F. App'x 471, 475 (6th Cir. 2008) (quoting 8 U.S.C. § 1101(a)(42)(B)). "The protections of the statute extend to the individual forced to undergo sterilization or abortion as well as their spouse." *Id.*

"'Disposition of an application for asylum requires a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General.'" *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)). The petitioner bears the burden of proof. *Id.*

> An alien may establish a well-founded fear of future persecution by demonstrating:
> (1) that he has a fear of persecution in his home country on account of race, religion,
> nationality, membership in a particular social group, or political opinion; (2) that
> there is a reasonable possibility of suffering such persecution if he were to return to
> that country; and (3) that he is unable or unwilling to return to that country because
> of such fear. A well-founded fear of persecution thus has both a subjective and an
> objective component: an alien must actually fear that he will be persecuted upon
> return to his country, and he must present evidence establishing an "objective
> situation" under which his fear can be deemed reasonable.

*Id.* (citations omitted).

The IJ's and BIA's conclusion that Petitioners did not establish a well-founded fear of future persecution—either because of a fear of forced sterilization or a fear of economic persecution—is supported by substantial evidence.

1.      *Forced Sterilization*

The IJ relied on the U.S. Department of State's May 2007 Profile of Asylum Claims and Country Conditions for China, which "reports that United States officials <u>in</u> China are not aware of any policy at either the national or provincial level requiring 'the sterilization of one partner of couples that have given birth to two children, at least one of whom was born abroad.'" (JA 81.) Further, the Profile "indicates that the current policy of Fujian Province is that children born abroad who return to China are . . . not counted for family planning purposes, as long as these children are not registered as permanent residents of China." (*Id.* at 82.) Additionally, the IJ noted that Pan testified that she knew of no one with U.S.-citizen children who was forcibly sterilized upon returning to China.

We have previously affirmed similar conclusions. In *Lin v. Gonzales*, 203 F. App'x 704, 708-09 (6th Cir. 2006), we noted that:

> [A] rational adjudicator could consider all of the information available on family planning in Fujian, find that the one consistent theme is the lax enforcement of any formal policies, and conclude that the probability of forced sterilization for any Chinese national returning to Fujian is low. A rational adjudicator could further conclude that . . . the fact that [the applicant] had the children while overseas further decreases the likelihood of forced sterilization upon return. Therefore, a rational adjudicator would not be compelled to find that [the applicant's] fear is objectively reasonable and the IJ's decision on this ground must be affirmed.

*Id.* at 708-09. And in *Huang v. Mukasey*, 523 F.3d 640 (6th Cir. 2008), we noted that "[t]he finding that children born outside of China are not counted for purposes of China's population-control policies continues to be accepted by the BIA, as well as by other courts of appeals." *Id.* at 653.

As such, Petitioners have failed to point to any evidence that compels the conclusion that the IJ and BIA incorrectly determined that Pan and Zheng failed to establish a well-founded fear that China's population-control policies would be applied against them.

## 2. *Economic Persecution*

The Petitioners additionally argue that even if they could opt not to register their children as permanent residents of China—and therefore not be subjected to family-planning penalties—the fees associated with paying for benefits, such as education and health care, of unregistered children amount to economic persecution. Economic deprivation may constitute persecution but "only when the resulting conditions are sufficiently severe." *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 n. 9 (6th Cir. 2004). Here, Petitioners have failed to establish that they will face "severe" economic persecution upon return to China. Petitioners merely state in their appellate brief, "'[w]e have no information as to what private education and private health care costs in China. We also have no information as to what Pan's financial earnings capability will be if she returns to China.'" (Petitioner's Brief 11.) *Cf. Li v. Gonzales*, 405 F.3d 171, 178 (4th Cir. 2005) (finding that the imposition of a fine of over a year's salary for having a child outside of wedlock did not constitute persecution).

Petitioners also argue that the IJ failed to consider all of the documentary evidence submitted. Yet, Petitioners do not indicate what specific evidence the IJ failed to consider. Either way, the claim lacks merit. "The question upon appeal . . . is not whether the IJ explicitly referred to every piece of arguably relevant evidence in her oral opinion, but whether the evidence in the record would 'compel' a rational adjudicator to come to a contrary conclusion." *Lin*, 203 F. App'x at 708 (citing

*Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)). As we noted above, the record does not compel a rational adjudicator to come to a contrary conclusion.

## C.    Withholding of Removal

Petitioners further contend that the IJ and BIA erred in denying their claims for withholding of removal. An alien is entitled to withholding of removal if "there is a clear probability that he will be subject to persecution [on protected grounds] if forced to return to the country of removal." *Pilica*, 388 F.3d at 951. The burden for establishing withholding of removal is more stringent than that for asylum. *Id.* Because Pan and Zheng fail to meet the standard for asylum, they necessarily fail to meet the standard for withholding of removal. *See Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) ("Because the lesser standard for establishing asylum eligibility eludes [the petitioner], we conclude that she cannot meet the more stringent requirements for withholding of removal.").

## D.    Convention Against Torture

Petitioners finally seek review of the IJ's and BIA's denial of their claims under CAT. In order to obtain such relief, "an alien has the burden of proving 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Pilica*, 388 F.3d at 951 (quoting 8 C.F.R. § 208.16(c)(2)). "Torture is an extreme form of cruel and inhuman treatment. . . ." 8 C.F.R. § 1208.18(a)(2). If an alien does not face a well-founded fear of persecution, he also fails to qualify for relief under CAT. *Ramaj v. Gonzales*, 466 F.3d 520, 532 (6th Cir. 2006). Since Pan and Zheng do not face a well-founded fear of persecution, the IJ and BIA did not err in denying them CAT relief.

## III.  CONCLUSION

For these reasons, we **AFFIRM** the BIA's decision and **DENY** the petition for review.