RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FRANK BENONI VINCENT,

                      *Petitioner,*

     *v.*

ERIC H. HOLDER, JR., United States Attorney
General,

                      *Respondent.*

No. 09-3975

On Petition for Review from the
Board of Immigration Appeals.
No. A79 689 042.

Decided and Filed: February 15, 2011

Before: MERRITT, ROGERS, and WHITE, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Mark M. Nesbit, NESBIT LAW FIRM, Columbus, Ohio, for Petitioner.
Craig A. Newell, Jr., UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF
IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

_____

## OPINION

_____

MERRITT, Circuit Judge. Petitioner, Frank Vincent, seeks review of the final order of the Board of Immigration Appeals affirming the immigration judge's denial of his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. We conclude that the asylum petition is untimely and that petitioner has not shown any "extraordinary" or "changed" circumstances to excuse the untimeliness. Likewise, petitioner has not shown a "likelihood of torture"

1

under the United Nations Convention Against Torture, as implemented by regulation issued by the United States Attorney General.  8 C.F.R. § 1208.1(a)(1).  However, because we disagree with the finding that petitioner did not suffer past persecution, we remand to the Board for further consideration as to whether petitioner has a well-founded fear of future persecution if returned to his native country of Sierra Leone.

Petitioner is a native and citizen of Sierra Leone.  He entered the country legally on July 2, 2000, on a nonimmigrant visitor visa that initially allowed him to stay until September 6, 2000, but was extended until March 31, 2001.  Vincent overstayed his authorized time and married a United States citizen on August 6, 2001.  He did not file an asylum application within one year of arriving in the United States, choosing instead to rely on his wife's citizenship to adjust his status.  On June 11, 2002, his citizen wife filed an immigrant visa petition (Form I-130) on his behalf and, on the same day, petitioner filed an application for adjustment of status based on the pending visa application.  A little over a month later, in July 2002, his wife died, causing his visa petition and adjustment-of-status application to be denied on May 6, 2003.  On July 14, 2003, about a year after his wife died, Vincent filed an asylum application.  He was placed in removal proceedings as an alien who remained in the United States longer than authorized, and a hearing was held in the immigration court on October 5, 2005.  After the hearing, in which Vincent was represented by counsel and conceded removability, he filed an updated application for asylum, withholding of removal and protection under the Convention Against Torture.  A merits hearing was held on October 25, 2007; and, at the conclusion of the hearing, the immigration judge orally denied Vincent's claims for asylum, withholding of removal and protection under the Convention Against Torture. Vincent timely appealed to the Board of Immigration Appeals, which dismissed his appeal on July 14, 2009.  Vincent timely filed a petition for review in this Court.

## I.  Asylum Application Untimely

The Immigration and Nationality Act requires that an asylum applicant "demonstrate[ ] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States."  8 U.S.C.

§ 1158(a)(2)(B).  This requirement is subject to exceptions in cases where the "alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within" the required one-year period.  *Id.* at § 1158(a)(2)(D).  A different subsection of Section 1158 creates a jurisdictional bar to review of the timeliness issue:  "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding whether changed or extraordinary circumstances exist to excuse the filing of an asylum application beyond one year after arrival in the United States.  *Id.* § 1158(a)(3).  However, the jurisdictional bar applies "only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction."  *See, e.g., Fang Huang v. Mukasey*, 523 F.3d 640, 650-51 (6th Cir. 2008) (quoting *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006)).

The immigration judge determined that the death of Vincent's wife in 2002 did not constitute "changed circumstances" as her death did not have anything to do with his eligibility for asylum.  The immigration judge found that Vincent, who arrived in the United States in July 2000, was already out of status and beyond the one-year filing deadline even before his marriage in August 2001.  The immigration judge further explained that Vincent's choice to change his status through his marriage to a United States citizen instead of applying for asylum did not constitute an "extraordinary circumstance" justifying or explaining the delay in filing an asylum application.  Finally, the immigration judge found that Vincent's health issues did not constitute "extraordinary circumstances" because they did not prevent him from carrying on with his life, including working.  Also, the health issues were not documented and he did not file his asylum application until June 2003, long after these health issues were resolved.

Vincent raises various due process claims concerning the untimeliness determination in an attempt to circumvent the jurisdictional bar to review by this Court. Vincent contends that the immigration judge was not a neutral arbiter, and also claims

that his due process rights were violated by the judge's bias, based on the immigration judge's determination that the death of Vincent's wife did not constitute an extraordinary circumstance. Specifically, Vincent challenges whether there was factual support for the immigration judge's alleged implication that Vincent's marriage was not *bona fide* and the factual determination of whether the delay in filing the asylum application was related to his wife's death. Vincent's arguments raise factual issues, not constitutional claims. In any event, the immigration judge did not make any findings about the legitimacy of Vincent's marriage. That fact was irrelevant to the issue of whether the asylum application was timely. Instead, the immigration judge found that Vincent's choice of marrying a citizen and pursuing legal status through the marriage instead of through an asylum application did not constitute an "extraordinary circumstance" excusing the untimeliness. Similarly, challenging the immigration judge's finding that Vincent's wife's death was unrelated to his untimely filing ignores the fact that the immigration judge found that Vincent's asylum application was already untimely when he married a citizen in August 2001. It was then another 10 months — June 2002 — before he and his wife began proceedings to adjust his status due to his marriage to a citizen. We see no prejudgment or bias on the part of the immigration judge in making these factual findings or commenting on Vincent's marriage.

Vincent also challenges the determination that there were no extraordinary circumstances justifying his late filing of the asylum application by arguing that applying for an adjustment of his visa status based on his marriage to a citizen was a faster and more-definite path to legal status than an asylum application and it was therefore reasonable for him to pursue that path only and not also file an asylum application. His argument is essentially that he should not be penalized for the fact that his wife died during the visa application and adjustment-of-status proceedings, an event that rendered him ineligible for permanent resident status. While the denial of his visa petition and his adjustment-of-status application are not before us and they were not before the immigration judge or the Board of Immigration Appeals in this proceeding, Vincent may find relief from a recent change in the law. On October 28, 2009, a new law was signed by President Obama that allows a widow(er) of a United States citizen to qualify as an

immediate relative regardless of how long the couple was married.  Pub. L. 111-83, § 568(c)-(e), 123 Stat. 2142, 2186-88 (2009).  The law amends Section 201(b)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b)(2)(A)(i), and removes the requirement that a couple must have been married for at least two years before the citizen-spouse's death in order for the surviving spouse to qualify for permanent resident status as an immediate relative of the late citizen-spouse.  Furthermore, Section 568(c)(2)(B) of the new law allows an alien widow(er) of a citizen who died before October 28, 2009, but who did not have a visa petition pending on that date — which would apply to Vincent as his visa petition and adjustment-of-status application were denied in 2003 — to file a Form I-360 with the United States Citizenship and Immigration Services that would allow for permanent resident status of the widow(er), provided it is filed by October 28, 2011, and the alien has not remarried.  Pub. L. 111-83, § 568(c)(2)(B), 123 Stat. 2142, 2186-87 (2009).  All other requirements for the approval of a visa petition remain unaltered, and we make no findings on Vincent's eligibility to file or the potential for approval of a petition should he choose to file one by October of 2011.

The other challenges raised by Vincent as due process challenges lack relevance to the untimeliness finding as they go to the immigration judge's findings that Vincent suffered no past persecution and would suffer no future persecution if returned to Sierra Leone.  We, therefore, lack jurisdiction to review the denial of the asylum application on the ground of untimeliness.

## II.  Withholding of Removal

Vincent also seeks review of the Board's decision to deny him withholding of removal under  the Immigration and Nationality Act and the Convention Against Torture. In support of his claim of past persecution in Sierra Leone, petitioner points to (1) the murder of his son by rebels, which he claims was in retaliation for Vincent's political opposition to the rebels' use of child soldiers and (2) the burning down of his home by the rebels.

To qualify for withholding of removal, the applicant bears the burden of demonstrating that it is more likely than not that his life or freedom would be threatened if he returned to Sierra Leone on account of his race, religion, nationality, membership in a particular social group or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b); *INS v. Stevic*, 467 U.S. 407, 429-30 (1984). However, if the applicant "is determined to have suffered past persecution in the proposed country of removal on account of [one of the five specified grounds], it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i). If the applicant establishes that he has suffered past persecution, the government may rebut the presumption of a well-founded fear of future persecution by showing by a preponderance of the evidence either that "[t]here has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds" or that "[t]he applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal." *Id.* § 1208.16(b)(1)(i)(A)-(B).

On appeal, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This standard "basically codifies the Supreme Court's substantial evidence standard." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (citing *Dia v. Ashcroft*, 353 F.3d 228, 247-49 (3d Cir. 2003)). Thus, the immigration judge's "determination should be upheld unless evidence 'not only supports a contrary conclusion, but indeed compels it.'" *Id*. at 702-03 (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)).

As to the killing of his son by rebels, Vincent's own testimony demonstrates that his son, who was an auto mechanic, was shot because he refused to give the rebels his customers' cars. At his hearing, Vincent testified that "[T]he rebels told [his son] that they wanted to take some of the cars . . . . [a]nd he objected, said these are [other] people's cars. After argument, they shot him in his living room, and they went." Admin. Rec. at 138. Vincent testified that his son's wife also told Vincent that the son

was shot because he refused to give the rebels his customers' cars. *Id.* at 166. Vincent presents no evidence that the rebels' motive stemmed from political opinion, imputed or otherwise, or that it was anything other than robbery.

However, the determination by the immigration judge and the Board that the record evidence does not demonstrate that the burning down of Vincent's house in 1999 constitutes past persecution is not supported by substantial evidence. Economic deprivation may constitute persecution. *Berdo v. INS*, 432 F.2d 824, 846 (6th Cir. 1970). Both the immigration judge and the Board recognized that the house burning may constitute economic deprivation, *see In re T-Z*, 24 I. & N. Dec. 163 (BIA 2007), but, upon examining the factual circumstances surrounding the burning, determined it was not severe enough to amount to persecution. Board Dec. at 2 (July 14, 2009), App'x to Petitioner's Brief at 3. Vincent testified that the rebels told him they would not harm him because he worked with the Red Cross, which had provided medical aid to rebels in the past. Vincent also testified that the rebels knew he was a member of the Council of Churches, a group that actively voiced opposition to the use of child soldiers by the rebels. Other evidence in the record supports the fact that the rebels knew who he was and were specifically targeting him when they burned his house. They had been looking for him when they killed his son, and soldiers in an international peacekeeping force in Sierra Leone had informed Vincent that rebels were looking for members of the Council of Churches who had participated in the meeting in Guinea with the exiled president of Sierra Leone. Vincent's participation in this meeting had been well publicized in print and television media. The record demonstrates that the Board lacked substantial evidence to conclude that the rebels did not specifically target him on account of his political opinion. This evidence and the circumstances surrounding the burning of the house compel the conclusion that the burning of Vincent's house was sufficiently severe and targeted to constitute persecution. *See T-Z*, 24 I & N Dec. at 174 ("[A] large-scale confiscation of property . . . may amount to persecution even though the applicant could otherwise survive."). To the contrary, the record compels the conclusion that the burning of Vincent's house was on account of his political opinion.

In addition, the totality of the circumstances  — which includes the killing of Vincent's son and the house burning — satisfy a finding of past persecution.  Standing alone, the evidence surrounding Vincent's son's death does not compel the conclusion that the killing itself was based on Vincent's political opinion, but it is not challenged that the rebels went to his son's home looking for Vincent.  The cumulative effect of the two incidents rises to the level of persecution because those incidents, in combination, "constitute a level of punishment, suffering and infliction of harm sufficient to establish past persecution."  *Vata v. Gonzales*, 243 F. App'x 930, 942 (6th Cir. 2007).

Having demonstrated past persecution, Vincent was entitled to a presumption of a well-founded fear of future persecution that the government could rebut by a preponderance of the evidence regarding his application for withholding of removal. Because it did not find past persecution, the Board did not conduct this analysis.  On remand, the Board should consider whether the government can carry its burden of rebutting the presumption of future persecution by showing changed circumstances in Sierra Leone or that Vincent may relocate to another part of the country or otherwise avoid persecution if returned to his native land.  8 C.F.R. § 1208.16(b)(1)(i)(A)-(B).

## III.  Convention Against Torture

As support for his claim that he more likely than not would suffer torture if returned to Sierra Leone, *see* 8 C.F.R. §§ 1208.16-18, petitioner testified that former rebels are working in the current government.  He cites no authority for this uncorroborated testimony and the *Country Report* does not support this contention. Vincent has failed to meet his burden of showing that he more likely than not would suffer torture at the hands of the government if returned to Sierra Leone.

For the foregoing reasons, we deny the petition for review of the Board's denial of Vincent's application for asylum and the Convention Against Torture, but we grant the petition as to the withholding of removal claim and remand to the Board for further proceedings.