NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0346n.06

No. 09-4392

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **YONGZHU JIN,** | ) | ON APPEAL FROM THE |
| | ) | BOARD OF IMMIGRATION |
| *Petitioner-Appellant,* | ) | APPEALS |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| **ERIC H. HOLDER, JR.,** Attorney General, | ) | |
| | ) | |
| *Respondent-Appellee.* | ) | |

FILED

*May 23, 2011*

LEONARD GREEN, Clerk

**BEFORE:** COLE, MCKEAGUE, and GRIFFIN, Circuit Judges.

**COLE, Circuit Judge.** Yongzhu Jin seeks review of the order of the Board of Immigration Appeals, affirming the immigration judge's denial of Jin's petition for withholding of removal and protection under the Convention Against Torture. For the following reasons, we **DENY** Jin's petition.

## I. BACKGROUND

Jin is a native and citizen of the People's Republic of China and of Korean ethnicity. He entered the United States without inspection on February 6, 2005. Jin received a Notice to Appear on January 4, 2006, charging him with removability under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(6)(A)(i).

On March 3, 2007, Jin applied for asylum and withholding of removal. Appearing with counsel before an immigration judge ("IJ"), Jin withdrew his application for asylum, admitted he was

subject to removability, and requested withholding of removal under the INA and protection under the Convention Against Torture ("CAT"). At the hearing, Jin testified in support of his application.

In 1992, Jin began providing assistance to North Korean refugees. He was arrested on two occasions for his assistance; first in 1993, and again in 1998. He was detained for three days and two hours, respectively, for each arrest, but was never charged with a criminal offense. After his second arrest, Jin was released upon his promise to pay 5,000 yuan at a later date. The fine amounted to approximately ten months of Jin's income, and Jin never paid the fine. In 2000, Jin was forced to close his family lumber business after the Chinese government failed to renew his business license. Jin testified that the government failed to renew his license as punishment for not paying the fine and for helping North Korean refugees. Jin was also visited at his home several times by the police for housing a Korean minister. The police warned Jin that if he continued to harbor the minister he would be arrested.

Jin and his family are practicing Presbyterians and regularly held and attended in-home meetings to study the bible. Jin testified that these activities were not registered with the Chinese government and were therefore prohibited. In 1995, Jin's mother was arrested for attending one of these meetings. Since this incident, however, his family has continued to practice their religion in China without interference from the Chinese government.

At the conclusion of the hearing, the IJ denied Jin's application for withholding of removal and relief under CAT. The IJ found Jin's credibility questionable based on discrepancies between his testimony and statements submitted by Jin's wife and sister. The IJ found though that, even crediting Jin's testimony, the incidents described by Jin in his testimony did not rise to the level of

persecution and that he failed to demonstrate that it was more likely than not that his life or freedom would be threatened in China or that he would be tortured.

On October 23, 2009, the Board of Immigration Appeals ("BIA" or "Board") dismissed Jin's appeal. Like the IJ, the BIA found that, even assuming the truthfulness of Jin's testimony, he failed to establish past persecution or that it was more likely than not that he would face persecution or torture in China. Specifically, the BIA noted that Jin was never physically abused or charged with a criminal offense in China, and that although his mother was once arrested at a church service, his family has since practiced their religion in China without incident.

## II. ANALYSIS

### A. Standard of Review

"Because the BIA did not summarily affirm or adopt the IJ's reasoning and provided an explanation for its decision, we review the BIA's decision as the final agency determination." *Young Hee Kwak v. Holder*, 607 F.3d 1140, 1143 (6th Cir. 2010) (internal quotation marks omitted). We review the BIA's decision under the substantial evidence standard. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004). This requires that we uphold the decision "unless evidence not only supports a contrary conclusion, but . . . compels it." *Vincent v. Holder*, 632 F.3d 351, 355 (6th Cir. 2011) (internal quotation marks omitted). The same standard of review applies to claims for relief under the CAT. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006).

### B. Withholding of Removal Under the INA

Withholding of removal under 8 U.S.C. § 1231(b)(3)(A) is mandatory if Jin demonstrated "that it is more likely than not that his life or freedom would be threatened if he returned to [China]

on account of his race, religion, nationality, membership in a particular social group or political opinion." *Vincent*, 632 F.3d at 354. This standard is stricter than the "well-founded fear" standard that applies to asylum applications. *Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003). If Jin can establish past persecution based on one of the five protected grounds, he is entitled to a rebuttable presumption that his life or freedom would be threatened upon return to China. 8 C.F.R. § 1208.16(b)(1).

### 1. Past Persecution

Jin claims he experienced past persecution when he was arrested and detained on two occasions and forced to close his business for assisting North Korean refugees. "[P]ersecution requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998).

In *Pilica v. Ashcroft*, 388 F.3d 941 (6th Cir. 2004), the petitioner had been arrested twice after attending political demonstrations and detained for a week following each arrest. *Id.* at 954. During his detainment he was not mistreated except for being "sworn at." *Id.* After attending a third demonstration he was beaten so severely by policemen that he was hospitalized for a week for head injuries. *Id.* We held that these occurrences did not compel a reasonable adjudicator to conclude this constituted persecution. *Id.* The incidents Jin experienced are not as severe as those experienced by the petitioner in *Pilica*. *Cf. Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007) (isolated incident where petitioner was detained for three days and kicked and slapped by police insufficient to compel a finding of persecution). Thus, although arrest and detention are among "the

[t]ypes of actions that might cross the line from harassment to persecution," *Haider v. Holder*, 595 F.3d 276, 286 (6th Cir. 2010) (alteration in original) (internal quotation mark omitted), the circumstances of Jin's arrests and detainment are insufficient to compel a finding of persecution. *See Vincent*, 632 F.3d at 355.

Jin also had to shut down his business after the Chinese government declined to renew his business license for Jin's failure to pay the fine imposed for helping North Korean refugees. Jin's claim is therefore one of economic deprivation, which, if sufficiently severe, can constitute persecution. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 625 n. 9 (6th Cir. 2004). To rise to the level of persecution, the conditions resulting from the economic deprivation must "constitute a threat to [the] individual's life or freedom." *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985), *overruled in part on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). In *Li v. Gonzales*, 405 F.3d 171 (4th Cir. 2005), the Fourth Circuit held that a fine of more than one year's salary was not severe enough to compel a finding of persecution. *Id.* at 178, *cited with approval in Mu Hua Pan v. Holder*, 381 F. App'x 572, 576 (6th Cir. 2010); *Xue Ying Lin v. Gonzales*, 203 F. App'x 704, 709 (6th Cir. 2006). The fine levied against Jin here is less than that found insufficient to constitute persecution in *Li*, as Jin testified that it was equivalent to approximately ten months of his salary. Additionally, although Jin was forced to close his business, he was able to find part-time work in China and does not contend that upon payment his business license application would not be approved. The conditions resulting from the fine imposed here do not compel a finding that Jin's life or freedom was threatened, *see Matter of Acosta*, 19 I. & N. Dec. at 222, and Jin has not presented any other evidence or argument persuading us otherwise.

Moreover, even when considered in the aggregate, the harm Jin experienced does not compel a finding of persecution. Accordingly, we find that substantial evidence supports the BIA's determination that Jin did not experience past persecution. *See Vincent*, 632 F.3d at 355.

### 2. Future Persecution

Jin also fails to demonstrate that "any reasonable adjudicator would be compelled to conclude" *see Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009), that it is more likely than not that his life or freedom would be threatened in China were he to return. To support his claim, Jin relies on the same evidence undergirding his claim that he suffered past persecution and adds the additional basis of persecution on account of his religious practices. However, as we have noted, Jin's prior confrontations with the Chinese government do not rise to the level of persecution. Moreover, the BIA found that there was nothing in the record indicating that the Chinese authorities continued to pursue Jin in his absence or will do so upon his return, especially in light of the fact that he was not charged with any criminal offense. On appeal, Jin has not directed us to anything to indicate otherwise. With respect to his religious practices, Jin contends that he cannot freely practice his religion in China because the unregistered gatherings are illegal. To support this claim, he points to an International Religious Freedom Report which states that attendees of house churches are arrested, detained, and physically abused. But as the IJ noted, the Religious Freedom Report makes clear that traditional Protestant sects are "routinely recognized" by the Chinese government. Jin testified that he and his family are Presbyterian and does not contest the IJ's conclusion that Presbyterianism is properly considered a mainline Protestant religion. Furthermore, as noted by the BIA, with the exception of one isolated incident involving Jin's mother fifteen years ago, Jin's

family continues to practice their religion in China without interference from the Chinese government. *See Farraj v. Holder*, 316 F. App'x 398, 399 (6th Cir. 2009) (upholding BIA's conclusion that applicant failed to establish clear probability of future persecution where applicant's similarly-situated family members returned to the native country and remained unharmed); *Matter of A-E-M-*, 21 I. & N. Dec. 1157, 1160 (BIA 1998) (explaining that a claim of persecution upon return is undercut if applicant's family remained in the county without incident). Accordingly, substantial evidence supports the BIA's denial of Jin's application for withholding of removal.

### C. Relief Under CAT

Under CAT, an individual may not be deported if "it is more likely than not that [the individual] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Though an individual need not show a nexus, he or she must establish a "particularized threat of torture." *Almuhtaseb*, 453 F.3d at 751 (internal quotation marks omitted). Torture is "an extreme form of cruel and inhuman treatment," 8 C.F.R. § 1208.18(a)(2), and is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" for several reasons, including punishment, intimidation or coercion, "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," *Id.* § 1208.18(a)(1). Jin contends that the same reasons that entitle him to withholding under the INA require a finding that he qualifies for relief under CAT. Thus, Jin has similarly failed to establish that the record compels the conclusion that he faces a particularized threat or likelihood of torture in China. *See Almuhtaseb*, 453 F.3d at 751; 8 C.F.R.

§ 208.16(c)(2).

### III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the Board's decision and **DENY** Jin's petition

for review.