NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0499n.06

No. 12-3849

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*May 20, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| XUEJIAO JI, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) ON PETITION FOR REVIEW FROM A |
| ERIC H. HOLDER, JR, Attorney General, | ) FINAL ORDER OF THE BOARD OF |
| | ) IMMIGRATION APPEALS |
| Respondent. | ) |

Before:  CLAY and COOK, Circuit Judges; OLIVER, District Judge[*]

COOK, Circuit Judge.  Xuejiao Ji, a Chinese citizen, petitions for review of a Board of Immigration Appeals ("BIA" or "Board") order denying her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  She claims that her religious beliefs make her a target for persecution.  The Immigration Judge ("IJ") found that conflicts between her testimony and declarations in her asylum application made Ji a non-credible witness and denied relief. The BIA agreed.  For the following reasons, we DENY the petition.

I.

Ji came to the United States in June 2008 using a passport in her own name and a

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

nonimmigrant student visa. In February 2009, she filed an asylum application with the Department of Homeland Security ("DHS") on the ground of religious persecution. Ji interviewed with an asylum officer, who denied her claim because of her vague and inconsistent testimony, as well as her apparent unfamiliarity with Christianity. The asylum officer referred her case to the Immigration Court. In March 2009, DHS filed a Notice to Appear ("NTA"), charging Ji with removability because she violated her student visa by no longer attending school. After conceding removability, Ji renewed her application for asylum, withholding of removal, and protection under the CAT.

At the October 2010 merits hearing, Ji testified as follows. In October 2005, while studying international economics and trade at Yaolin Technical University in China, Ji's piano teacher introduced her to Christianity and encouraged her to attend in-home Bible-study meetings. Six months later, she learned the Chinese government prohibits worshiping in unregistered "house churches." In June 2007, three police officers arrived at the house church, accused Ji and others of gathering illegally, and took them to the Quinsong police station for questioning. Ji stated that the police interrogated her twice during her eight-day detention. During the first interrogation, one officer slapped her across the face. At the second, an officer kicked her twice in the abdomen after hitting her head against the wall. Despite some bruising on her abdomen, Ji required no medical attention.

According to Ji, the police released her without filing criminal charges after insisting she sign a "letter of guarantee" in which she agreed to cease all contact with the church members. They also

required Ji to report to the police station on a bimonthly basis. Ji stated that, after moving back in with her father post-graduation, the police came to her father's home and continued to warn her against engaging in any home church activities. Although claiming that the police kept her under constant surveillance during this period, Ji acknowledged that she had no proof, just suspicion, and encountered the police only during her station visits and twice at her father's home. She further testified that in November 2007 she contacted a "snakehead" (human smuggler) to arrange entry into the United States with the necessary paperwork, including a passport in her name and a student visa. She left China in June 2008, passing normal security checkpoints and using her own name without incident.

During cross-examination, Ji testified that her mother was granted asylum in 2005 and lived in Florida. Yet, on her 2009 application for asylum, Ji listed her mother as still living in China. When pressed about this discrepancy, she suggested that either she or "the law firm [that] did the form ma[de] the mistake." When asked if the asylum officer went over the question with her, Ji replied that she "did not remember all the questions." But in view of the check marks next to each of the questions in the application, the IJ found it implausible that Ji had not had an opportunity to correct the answer in the proceedings before the asylum officer.

DHS also presented various documents that undercut Ji's claims of religious persecution. First, the International Religious Freedom Report states "[m]ost Christian groups, the majority of which are not members of the P[atriotic] R[eligious] A[ssociation], no longer operated in strict

secrecy" in China. While acknowledging that some church members may face harassment in certain areas, the report noted that religious leaders are the ones primarily at risk. Second, the State Department's Country Conditions Report notes that "many house churches . . . are quietly tolerated by local authorities so long as they remain small and unobtrusive." Third, a 2007 Canadian Immigration and Refugee Board document, citing a New York-based organization for human rights in China, reported that persons previously arrested in church raids become part of a Public Security Bureau database. Someone in this situation would have a difficult time obtaining and using a passport in their own name to leave the country. The IJ reasoned that this report undermined Ji's testimony, particularly her claimed use of a passport.

The IJ orally denied Ji's claims, finding that her testimony lacked credibility, and, even if credited, it failed to establish religious persecution. Ji appealed and the BIA denied relief, underscoring the inconsistent answers regarding her mother's residence, as well as the inherent implausibility of her story. It also agreed with the IJ's analysis that Ji's testimony, taken at face value, failed to fall within the definition for persecution. Ji timely petitioned for review.

II.

A. Standard of Review

"Where, as here, the BIA affirms an IJ's ruling and adds its own comments, we review both the IJ's decision and the BIA's additional remarks." *Lateef v. Holder*, 683 F.3d 275, 279 (6th Cir.

2012) (internal quotation marks and alteration omitted). We apply the substantial evidence standard to the BIA's factual findings and credibility assessments, reversing only if the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992). Finally, the REAL ID Act of 2005 governs Ji's challenge. The Act requires that credibility determinations be made under the "totality of the circumstances," permitting an IJ to take into account "the consistency between the applicant's . . . written and oral statements . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see also El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009).

B. Credibility Assessment

Ji charges that the BIA's adverse credibility findings fail the substantial-evidence standard as it rested on "speculative conclusions and trivial inconsistencies." We disagree. Substantial evidence, including: "the inherent plausibility of [Ji's] account, the consistency of her written and testimonial evidence, and her demeanor and responsiveness while testifying," supports this finding. On the plausibility point, the Board emphasized "documentary evidence indicating that individuals arrested in church raids are likely to be placed into a government database monitoring system"—evidence belying Ji's claim that she left China using a passport in her own name. Ji responds that even if China employs such a database, "that allegation alone is no reason to conclude that any person included in the database would be unable to procure a passport." Fair enough. But

the accumulated inconsistencies diminished the value of this point. Ji maintains that her inconsistent statements regarding her mother's residence can be explained away. Yet her story fails to account for the check marks next to the questions, signaling her failure to correct the inconsistent answer. Likewise, the supposition that she could have escaped entry into the database does not undermine the BIA's findings. An asylum applicant's explanation for an inconsistency will not overcome an adverse credibility finding if the IJ's contrary interpretation is reasonable. *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005). Lastly, Ji's argument that these inconsistencies were too "trivial" to erode her credibility misapplies the REAL ID Act, which allows courts to consider "all relevant factors," not just those that go to the heart of the petitioner's claims. *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011). The BIA's decision stands because the record supplies substantial evidence for its credibility assessment.

## C. Asylum Eligibility

The BIA also concluded that Ji's statements, even if credited, fell below the standard required to receive asylum—a demonstration of either past persecution or a well-founded fear of future persecution, 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a). In challenging this conclusion, Ji makes no attempt to distinguish her case from others in which petitioners have suffered greater harm and yet still been denied asylum for lack of persecution. *See Mohammed v. Keisler*, 507 F.3d 369, 371-72 (6th Cir. 2007) (three-day detention, kicking and slapping by police insufficient); *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (same, police beating resulting in week-long

hospitalization). Ji also overlooks the State Department's country conditions report suggesting religious leaders are the ones who face possible persecution. Because she conceded that she never occupied a leadership position, the BIA reasonably declined to presume persecution. *See Ramaj v. Gonzales*, 466 F.3d 520, 531 (6th Cir. 2006) (finding that, even if a rebuttable presumption of persecution applies, country reports provide "substantial evidence" to overcome the presumption). The BIA's denial of Ji's asylum claim rests on substantial evidence and nothing she points to in the record compels a different result.

D. Withholding of Removal and CAT

Ji's withholding of removal and CAT claims also lack merit. To qualify for withholding of removal, Ji must demonstrate that "it is more likely than not that [her] life or freedom would be threatened if [she] returned to [China] on account of [her] race, religion, nationality, membership in a particular social group, or political opinion." *Vincent v. Holder*, 632 F.3d 351, 354 (6th Cir. 2011) (citing 8 U.S.C. §1231(b)(3)(A); 8 C.F.R. § 1208.16(b)). This "clear probability" standard requires "a greater quantum of proof . . . as to the likelihood of persecution" than asylum. *Castellano-Chacon v. INS*, 341 F.3d 533, 544-45 (6th Cir. 2003). Unable to carry asylum's lesser burden of proof, Ji's claim also fails the more stringent standard. To obtain relief under the CAT, Ji must show "it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). At most, the record suggests Ji risks "embarrassment" or "harassment" if she returns to China, neither of which rises to the level of torture. Thus, we see

no reason to disturb BIA's decision.

III.

We DENY Ji's petition for review.