**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0678n.06

**No. 12-4246**

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| WILLIAN VOVANY CASTRO, | ) | |
| | ) | **FILED**<br>Jul 23, 2013<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM |
| | ) | THE BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

Before:  ROGERS and COOK, Circuit Judges; VAN TATENHOVE, District Judge[*]

COOK, Circuit Judge.  Willian Vovany Castro, a citizen of El Salvador, seeks review of a Board of Immigration Appeals ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his claims for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  For the following reasons, we DENY his petition.

I.

Castro illegally entered the United States in 2001.  Although 8 U.S.C. § 1158(a)(2)(B) requires an applicant to file for asylum within one year of arrival in the United States, Castro waited

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

over seven years, filing in 2008 after conceding his removability at an earlier hearing before the IJ. At his removal hearing in 2010, Castro testified as the sole witness, and the IJ found him credible.

"Mara Salvatrucha" ("MS-13") is an international criminal gang actively operating in El Salvador. Castro testified that, according to information provided by his mother, MS-13 killed his father in 1984 for failing to pay it protection money when Castro was around six months old. Though his father's death certificate did not attribute his death to homicide, it identified the cause as a deep thorax wound inflicted by a sharp-edged weapon. Castro also testified that, according to his mother, MS-13 killed his stepfather three to four years after his father because the gang feared Castro's stepfather might report incriminating information about gang members to the authorities.

Castro chronicled MS-13's attempts to recruit him as a teen. The first time, in 1996 or 1997, gang members asked Castro to join but he refused, prompting them to push and hit him before letting him go. During the gang's second try in 1997, members approached him after school. When Castro refused, they roughed him up once again. Finally, three years later, gang members escalated their recruitment; they stormed into Castro's home, hit him, held a knife to his neck, and threatened to kill him if he continued to resist membership. They left only after Castro's mother offered them cash and the family television set, warning they would kill Castro upon his next refusal to join. Fearing for his life, Castro fled El Salvador.

Even after Castro left El Salvador, he testified that MS-13 hurt other family members. In early 2010, nine years after he arrived in the United States, his uncle and cousin died from blunt

trauma to their heads. Though their death certificates did not specify their injuries' sources, Castro claimed that another cousin told him gang members were responsible. The gang's motivation for these acts, however, remains unclear.

The IJ denied Castro's asylum application because Castro filed the application late. It then denied his application for withholding of removal, finding that Castro did not suffer past persecution or hold a well-founded fear of future persecution on account of a statutorily protected ground because MS-13 targeted him for gang-recruitment purposes. The IJ also denied him protection under the CAT. After supplementing the IJ's conclusions with its own reasoning, the BIA affirmed the denial of Castro's applications.

II.

A. Asylum

Asylum applicants must demonstrate by "'clear and convincing evidence'" that they filed an asylum application within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B); *Vincent v. Holder*, 632 F.3d 351, 352 (6th Cir. 2011). An applicant who demonstrates exigencies, or changed circumstances that materially affect the applicant's asylum eligibility, may merit an exception to this one-year filing period. 8 U.S.C. § 1158(a)(2)(D); *see* 8 C.F.R. § 208.4(a)(4)–(5) (explaining changed and extraordinary circumstances). Our review of this one-year timeliness bar is confined to issues involving "constitutional claims or matters of statutory construction." *Vincent*,

632 F.3d at 353 (citation omitted); *see also* 8 U.S.C. § 1158(a)(3); *Fang Huang v. Mukasey*, 523 F.3d 640, 650–51 (6th Cir. 2008). "[T]he timeliness of an [applicant's] asylum application is usually a question of fact." *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007).

The IJ denied Castro's asylum application as untimely, relying on Castro's inability to cite legal authority establishing that his reasons for missing the one-year asylum deadline—"bad advice from friends or acquaintances" and "lack of knowledge of the law"—qualified as grounds for an exception to the one-year filing period. The BIA agreed. On appeal, Castro argues that the IJ erred in relying on the absence of legal authority to discount Castro's grounds for claiming an exception given that his unique circumstances deserved full consideration. Because this argument raises no constitutional or statutory construction claim, we lack jurisdiction to consider it. *See Sica Ixcoy v. Holder*, 439 F. App'x 524, 528 (6th Cir. 2011) (declining review of untimely asylum application on jurisdictional grounds after IJ and BIA "made a factual determination" that petitioner lacked knowledge of U.S. immigration law); *Lybesha v. Holder*, 569 F.3d 877, 881 (8th Cir. 2009) (holding that ignorance of asylum laws or application deadlines is factual in nature and therefore unreviewable).

B. Withholding of Removal

Although we lack jurisdiction to review the factual argument Castro presses regarding his asylum application, we may review the BIA's denial of his application for withholding of removal. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006). "Where, as here, the BIA affirms an

IJ's ruling and adds its own comments, we review both the IJ's decision and the BIA's additional remarks." *Lateef v. Holder*, 683 F.3d 275, 279 (6th Cir. 2012) (alteration and internal quotation marks omitted). We apply a substantial-evidence standard to the BIA's factual findings, including its credibility assessment, reversing only if the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992).

To qualify for withholding of removal, applicants must demonstrate that it is more likely than not that, if returned to their home country, they would face persecution on account of a statutorily protected ground, including "membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); *see* 8 C.F.R. § 1208.16(b)(1)–(2). This presents a more stringent standard than that applied to asylum claimants. *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004).

### 1. Family as Particular Social Group

Because Castro failed to present his "family as a social group" argument to the IJ at the hearing, the government argued that it was waived. Castro's claim, however, fails for a more fundamental reason: even had it been presented, substantial evidence supports the BIA's alternative holding that MS-13 targeted Castro to recruit him to the gang, not *because of* the family to which he belongs.

The authority Castro cites recognizes that applicants claiming membership in family groups must face persecution by virtue of their family ties. In *Lopez-Soto v. Ashcroft*, the Fourth Circuit

explained that even when a petitioner asserts his family as a "particular social group," courts must still evaluate causation; that is, they must "determine whether Petitioner's persecution was 'on account of' such family membership." 383 F.3d 228, 236 (4th Cir. 2004), *rehearing en banc granted but dismissed after settlement*. The Fourth Circuit sustained the BIA's decision that, despite the gang's murder of the petitioner's brother for resisting membership, the petitioner faced recruitment and threats "because he was a 16-year-old male living in the area, and not because he was a member of a particular family." *Id.* at 236; *see also Iliev v. INS*, 127 F.3d 638, 642 (7th Cir. 1997) (requiring demonstration that petitioner's "family was a particular target for persecution"); *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993) (granting asylum relief because government specifically targeted petitioner "to extract information about the location of another family member").

Castro argues that his three interactions with MS-13, in addition to the murders of his father, stepfather, uncle, and cousin, make it more likely than not that MS-13 will persecute him because of his family ties if he returns to El Salvador. But the BIA viewed the situation differently, reasoning that the gang targeted Castro for recruitment purposes and that no "other motivation existed." Substantial evidence supports the BIA's conclusion. For example, in a declaration Castro submitted to the IJ, he wrote that the gang came after him "[e]ver since [he] reached the desirable age for the gang." (AR 394, Castro Letter.) He cannot point to evidence demonstrating they came after him because of his status as a Castro. Horrific though the circumstances are, we leave the BIA determination undisturbed in the absence of evidence compelling a contrary conclusion. *Klawitter*, 970 F.2d at 152.

2. Salvadoran Male Social Group

At his hearing, Castro claimed that he suffered past persecution on account of his membership in a social group, specifically: "young Salvadorian males who are targeted by the gangs for recruitment, and are retaliated against [for] refusing to join their gang." (AR 164.) The IJ disagreed, citing *Matter of S-E-G-*, an earlier BIA holding that neither "Salvadoran youth who refused recruitment into the MS-13 criminal gang [n]or their family members constitute a particular social group." 24 I. & N. Dec. 579, 590 (BIA 2008). Thus, the IJ concluded, MS-13's treatment of Castro "does not . . . equate [to] persecution on account of a protected characteristic." Similarly, the IJ held that Castro's vocal resistance to the gangs—a purported political opinion—did not entitle him to relief because "telling [gang members] verbally that he would not join doesn't bear any of the characteristics of a political opinion." The BIA agreed, applying the reasoning behind *Matter of S-E-G-* to Castro's situation.

Castro attempts to distinguish *Matter of S-E-G-*, where the BIA held that Salvadoran youth that resist gang membership form too broad a group to be protected, by arguing that *his family's* repeated interactions with MS-13 whittle that broad group to a recognizable social group. Though roping off a smaller group (Castro's family) from a larger population (Salvadoran youths resisting recruitment) does limit the size of the group in which Castro claims membership, he still cannot differentiate the reason MS-13 targets all El Salvadoran recruits and their families from the reason they targeted him: his resistance to gang recruitment. *Cf. Almuhtaseb*, 453 F.3d at 750 (requiring

a withholding applicant to demonstrate his or her "predicament is appreciably different from the dangers faced by [their] fellow citizens") (quotation mark omitted). Although MS-13 harmed several of Castro's family members, substantial evidence supports the BIA's finding that Castro faced retaliation for recruitment, not familial ties.

Castro's second attempt at distinguishing the *S-E-G-* decision—that he suffered more severe treatment from MS-13 than the *S-E-G-* applicants—fails, too. The IJ addressed this concern and found no evidence that Castro ever required any medical treatment for his injuries, just like the applicants in *S-E-G-*. The BIA agreed with this determination, and substantial evidence supports its decision.

Because Castro's past-persecution arguments double as his future persecution arguments, he also cannot establish a likelihood of future persecution. Unable to attribute his treatment in El Salvador to his status as a Castro family member, "the fact that [Castro] may become a victim of crime if he is returned to El Salvador" is not enough.

C.  CAT Relief

Castro argues that he merits CAT relief because MS-13 subjected him to "severe pain and suffering, both mental and physical," and "being a member of his family makes it more than likely that this treatment . . . will continue upon his return to El Salvador." But as the IJ and the BIA noted, eligibility for CAT relief requires that the applicant face torture "inflicted by or at the instigation of

or with the consent or acquiescence of a public official or other person acting in an official capacity."

8 C.F.R. § 1208.18(a)(1).  In light of the Salvadoran government's "concerted efforts to attempt to deal with the gang problem in El Salvador," the IJ found "no evidence" that the Salvadoran government would turn a blind eye to torture by MS-13.  The BIA agreed, and substantial evidence supports this assessment.  Castro therefore cannot meet the CAT's high threshold for relief.

III.

We DENY the petition.