NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0025n.06

Case No. 21-3187

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 14, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JUANA MELCHOR TAPERIA, | ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW |
| v. | ) ) ) | FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) ) | |
| Respondent. | ) ) | O P I N I O N |

Before: COLE, LARSEN, and MURPHY, Circuit Judges.

COLE, Circuit Judge. Petitioner Juana Melchor Taperia, a native and citizen of Guatemala, suffered abuse at the hands of her domestic partner. After almost a decade of abuse, Melchor fled to the United States and sought asylum and withholding of removal based on membership in purported social groups. An immigration judge denied asylum and withholding of removal, and the Board of Immigration Appeals ("BIA") affirmed that ruling, dismissing her appeal. Melchor now petitions this court for review of the BIA order dismissing her appeal. For the reasons stated, we deny the petition.

I. BACKGROUND

Petitioner Melchor is a mother and 32-year-old native citizen of Guatemala. (A.R. 305; 315.) She met the father of her children, Vicente Reyes Teletor, the year she turned 17. At the

time, she was living in the United States. (A.R. 169.) She moved in with Vicente, and after only a few months, he began to physically abuse her. (*Id.*)

In 2007, Melchor's first son was born, and the abuse escalated. Vicente dragged her and hit her with his fists. (A.R. 170.) She went to a woman who worked for her apartment building and asked for help. The woman called the police and reported Vicente. (*Id.*) The police arrested him, and he was subsequently removed to Guatemala. But Vicente returned to the United States within a month. (*Id.*) And upon his return, Vicente convinced Melchor to get back together with him because of their son. (*Id.*)

When she moved back in, he continued to abuse her, both physically and emotionally. (*Id.*) The abuse included regular threats. Specifically, Vicente threatened to harm Melchor's parents and family back in Guatemala. (A.R. 171.) Melchor believed these threats because Vicente knew where her parents lived. (*Id.*) This abuse went on until 2010, even when she was pregnant with their second child. (A.R. 171 –72.)

In 2010, Vicente was again removed to Guatemala. (A.R. 172.) Vicente repeatedly called Melchor from Guatemala, demanding that she return. (*Id.*) He threatened to harm her family if she did not obey. (*Id.*) Afraid Vicente would act on these threats, she returned to Guatemala and moved in with Vicente in February of 2011. (A.R. 172 –73.) For about three months, everything was fine, but by the spring, Vicente was once again abusing Melchor. He hit, dragged, and kicked her multiple times per week. (A.R. 173.) Then he would lock her away in a room until the bruises on her body and face went away. (A.R. at 174, 176.) Sometimes, when the children asked why their mother was crying, Vicente would hit them with his belt. He would also lock away the children with Melchor. (A.R. 177.) And while hitting Melchor, Vicente would regularly threaten to take the children from her. (*Id.*)

After one such beating in 2016, Melchor found a knife and unlocked the door. (*Id.*) She grabbed her children, ran to her neighbor's home, and used the neighbor's cellphone to call her family. Her family came to help her leave. (A.R. 177.) But Vicente found Melchor at her parents' home and threatened to kill her if she reported him. (A.R. 178.) With the help of her family, Melchor nonetheless attempted to file a report in family court. When she tried, she discovered that Vicente had preemptively filed his own report, alleging that Melchor was the abuser. (*Id.*)

The threats continued until finally Melchor left her children with her parents and fled to the United States in 2016. (*Id.*) She arrived in the United States on September 25, 2016, without a valid entry document. (A.R. 89.) In January of 2017, Vicente took the children from her parents by threatening them. (A.R. 179.)

On April 5, 2017, the Department of Homeland Security issued a Notice to Appear charging that Melchor was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because she lacked a valid entry document. (A.R. 358-359.) In response to the government's removal proceedings against her, Melchor sought asylum and withholding of removal. (A.R. 334.) Her application was timely filed on September 25, 2017. (A.R. 305–18.) In support of her application, Melchor asserted that she was being persecuted on account of her membership in the following social groups: "women in Guatemala unable to leave their domestic relationship" and "Guatemalan women viewed as property by virtue of their position in a domestic relationship." (A.R. 336.)

On December 19, 2017, a hearing was held in front of an immigration judge, and Melchor, represented by counsel, testified to the abuse she suffered. (A.R. at 161.) On May 28, 2018, the Immigration Judge ("IJ") issued a written decision and removal order, denying Melchor's asylum and withholding of removal claims. (A.R. 137.) The IJ denied her claims for relief for two primary reasons. First, the IJ determined that although the proposed social groups were cognizable,

Melchor failed to establish her membership in either group because she was able to leave her relationship with Vicente. (A.R. 147.) Second, the IJ found that Vicente's abuse was not motivated by membership in a particular social group. (A.R. 149.)

Melchor timely appealed the IJ's order to the BIA. (A.R. 84.) On January 28, 2021, the BIA dismissed her appeal for three primary reasons. First, although the BIA did not decide whether the purported groups were cognizable, it agreed with the IJ that Melchor could not show membership because she was able to leave her relationship with Vicente. (A.R. 3–4.) Second, the BIA held that Melchor had not established that she had suffered past persecution on account of her membership in one of the purported protected social groups, and thus she was ineligible for asylum. (A.R. 5.) Finally, the BIA held that because she did not satisfy the burden of proof with respect to her asylum claim, she also could not satisfy the burden of proof with respect to her withholding of removal claim. (A.R. 5.)

Melchor timely appealed the BIA's order to this court.

## II. ANALYSIS

Melchor makes three arguments on appeal. First, she contends that the BIA's finding that she was not a member of the particular social groups "women in Guatemala unable to leave their domestic relationship" and "Guatemalan women viewed as property by virtue of their position in a domestic relationship" was not supported by substantial evidence. (Pet. Br. 2.) Second, Melchor argues that the BIA erred in finding that she had not experienced past persecution. (*Id.*) Finally, she argues that the BIA failed to meaningfully distinguish between asylum and withholding of removal. (*Id.*) We address these arguments in turn.

## A. Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006)). We review both the IJ's legal findings and the BIA's legal findings de novo, *Giraldo v. Holder*, 654 F.3d 609, 611 (6th Cir. 2011), and their factual findings under the substantial-evidence standard, *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012). Under the substantial-evidence standard, their factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) (quoting *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009)).

## B. Burdens of Proof for Asylum and Withholding of Removal

To be eligible for asylum, a petitioner must demonstrate that she "is unable or unwilling to return to… [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011). Melchor, therefore, bears the burden of establishing that: (1) her treatment constitutes past persecution or that she has a well-founded fear of future persecution; (2) there was a connection between the persecution and the protected ground; and (3) the persecution was committed by the government, or by non-government actors whom the government was unable or unwilling to control. *See Pilica v. Ashcroft*, 388 F.3d 941, 950–51 (6th Cir. 2004). "If the applicant establishes that [s]he has suffered

past persecution," she becomes entitled to a presumption of a well-founded fear of future persecution. *Vincent v. Holder*, 632 F.3d 351, 355 (6th Cir. 2011).

To qualify for withholding of removal, a petitioner must similarly establish that if she is removed to her country of origin, her "life or freedom would be threatened" based on her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An applicant seeking withholding of removal faces "a more stringent burden than what is required on a claim for asylum," *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005) *superseded by statute on other grounds as stated in Nozadze v. Sessions*, 740 F. App'x 476, 480 (6th Cir. 2018) (quoting *Pilica*, 388 F.3d at 951), and must also demonstrate "that there is a clear probability that [s]he will be subject to persecution if forced to return to the country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (quoting *Pilica*, 388 F.3d at 951).

### 1. Particular Social Group

We first address Melchor's contention that the BIA's finding that she was not a member of "women in Guatemala unable to leave their domestic relationship" or "Guatemalan women viewed as property by virtue of their position in a domestic relationship," was not supported by substantial evidence. The INA does not define "particular social group," but the BIA and this court have articulated its requirements. A group's shared characteristic "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233–34 (BIA 1985)). Also, "a social group may not be circularly defined by the fact that it suffers persecution." *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005). And the "alleged social group must be both particular and socially

visible." *Umaña-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013) (quoting *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir. 2010)).

In *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), the BIA held that "depending on the facts and evidence in an individual case, 'married women in Guatemala who are unable to leave their relationship' can constitute a cognizable particular social group that forms the basis of a claim for asylum or withholding of removal.'"[1]  *Id.* at 388.  Our determination of whether someone is a member of a specific social group is a factual inquiry, and we consider a range of relevant factors, including cultural and legal constraints.  *See Juan Antonio v. Barr*, 959 F.3d 778, 792 (6th Cir. 2020).

Here, the BIA did not err when it affirmed the IJ's determination that Melchor failed to establish membership in the proposed social groups.  Substantial evidence from the record supported the BIA's finding that Melchor "had the means and ability to leave her relationship with her ex-partner," Vicente. (A.R. 3.)  With the support of her parents, Melchor was able to escape Vicente and move to the United States in 2016.  (A.R. 177–78.)  And at her 2017 removal hearing, Melchor testified that her experiences with Vicente substantially changed once she left.  Specifically, once Vicente took custody of their children in 2017, she no longer heard from him; no more threats were made.  He did not try to taunt her about the children.  (A.R. 195.)  In fact, Melchor testified that she did not even know where he lived.  (A.R. 193.)  Melchor has been able to pursue her asylum claim in the United States without any contact from Vicente.

This period without abuse or threats from Vicente is certainly relevant to the "ability to leave" analysis.  Although the record demonstrates that, for years, Melchor suffered domestic violence, she was nonetheless successful in "removing herself from these horrific circumstances"

---

[1] Melchor was never married to Vicente, but that fact alone is not enough to make her ineligible for membership in the purported group.

when she came to the United States in 2016. (A.R. 4.) Unlike many other victims of domestic violence, cultural and legal constraints in Guatemala did not prevent Melchor from leaving Vicente. In fact, her family encouraged her to leave him and seek protection. And the record indicates she did receive a Guatemalan court order of protection against Vicente. (A.R. 93.)

Under the substantial-evidence standard, the BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Slyusar*, 740 F.3d at 1072. Given the support of her parents, and the lapse in time since she last heard from Vicente, the evidence on the record does not compel a finding that Melchor was unable to leave her relationship.

Melchor counters that it would be inappropriate to hinge the "ability to leave" analysis on the fact she fled Guatemala in 2016 for the United States. (Pet. Br. 15.) She argues it would undercut the purpose of asylum if a petitioner's ability to escape her home country necessarily defeated her asylum claim. (*Id.*) We agree that not "every woman who is able to escape her husband thereby removes herself from the social group of women who are unable to leave their relationship." *Juan Antonio v. Barr*, 959 F.3d at 791 (6th Cir. 2020) (quoting *Martinez-Martinez v. Sessions*, 743 F. App'x 629, 634 (6th Cir. 2018)).

Our precedent indicates that in some situations, a woman who leaves her abuser, but is nonetheless unable to live "without serious incident" can still establish membership in the social group of women unable to leave their relationship. *Id.* In *Juan Antonio*, for example, we held that the BIA's conclusion that petitioner was able to leave her relationship was unsupported by substantial evidence, because petitioner in that case was not living in a period of calm while separated from her abuser. *Id.* Her husband continued to threaten to kill her, repeatedly sent his new girlfriend to threaten petitioner and yell at her, threatened to kidnap their youngest child, and

beat their oldest child. *Id.* But in Melchor's case, the evidence paints a different picture. She has not heard from Vicente at all. For all these reasons, the BIA's finding that Melchor was not a member of the purported social groups is supported by substantial evidence.

### 2. Past Persecution

We next address whether the BIA's finding that Melchor did not suffer past persecution was supported by substantial evidence. To demonstrate past persecution in support of a grant of asylum, Melchor must show that she was specifically targeted and was not simply a victim of indiscriminate mistreatment. *See* 8 U.S.C. § 1101(a)(42). In its order, the BIA found that Melchor "did not show that she suffered past persecution on account of a protected ground." (A.R. 5.) Here, the purported persecution is Vicente's abuse. Because this is non-governmental conduct, Melchor must also show that Vicente is "either aligned with the government or that the government is unwilling or unable to control [him]." *Khalili*, 557 F.3d at 436 (quoting *Raza v. Gonzales*, 484 F.3d 125, 129 (1st Cir. 2007)). To meet this standard, Melchor must show that she "could not reasonably expect the assistance of the government" in preventing Vicente's abuse. *Al-Ghorbani v. Holder*, 585 F.3d 980, 998 (6th Cir. 2009).

Here, the record does not support past persecution. Without a doubt, the abuse Melchor suffered at the hands of Vicente was horrific. But her asylum claim is tied to the purported social groups, and substantial evidence supports the BIA's conclusion that she is not a member of either group. Further, as the IJ found, any abuse perpetrated by Vicente was not motivated by Melchor's purported memberships, and instead by alcohol and drug use. (A.R. 121.) Moreover, the record indicates that government entities in Guatemala did in fact assist her. Specifically, as the IJ found, a Guatemalan court granted Melchor an order of protection against Vicente in 2015. (A.R. 93.)

For the foregoing reasons, the BIA's finding that Melchor did not establish past persecution was also supported by substantial evidence.

### 3. <u>**Withholding of Removal**</u>

Melchor's final argument is that the BIA failed to meaningfully distinguish between asylum and withholding of removal. In its order, the BIA explains that "because the respondent did not satisfy the lower burden of proof for asylum, it follows that she did not satisfy the higher burden required for withholding of removal." (A.R. 3.) Melchor takes issue with the brevity of this determination and argues we should remand so the BIA can consider separately whether she is eligible for withholding of removal. But here, the IJ did not rely solely on its finding regarding asylum to determine that Melchor did not meet the standard for withholding of removal. Instead, the IJ, after reviewing the evidence, reasoned that Melchor failed to meet her burden of proof to illustrate, as required for withholding of removal, that she was persecuted or would "more likely than not" be subject to persecution on account of her membership in a particular social group if she returned to Guatemala. (A.R. 101–102.) Although a bit more analysis would have been welcome, considering the well-reasoned finding by the IJ, the BIA did not err in agreeing. For that reason, substantial evidence supports the BIA's finding that Melchor did not satisfy the heightened burden required for withholding of removal.

### III. CONCLUSION

We deny Melchor's petition for review.